UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Robyn Krile, individually, | ) |
| | ) Case No. _____ |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| City of Bismarck, North Dakota, a | ) |
| Municipal Corporation, and | ) |
| Daniel Donlin, in his individual and official | ) |
| capacity as retired Chief of Police for | ) **COMPLAINT** |
| the City of Bismarck, North Dakota, | ) **(Jury Trial Demanded)** |
| | ) |
| Defendants. | ) |

[1]   COMES NOW, the Plaintiff Robyn Krile (hereinafter "Robyn"), on behalf of herself, by and through her attorney, Chris Redmann of Redmann Law, P.C., to file her complaint against the City of Bismarck (hereinafter "City"), and Daniel Donlin (hereinafter "Donlin"), and collective referred to as "Defendants," for the cause of action would show as follows:

**Statement of Action**

[2]   This is an action which arises under the laws of the State of North Dakota and the Constitution of the United States; specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; North Dakota Human Rights Act, N.D.C.C. ch. 14-02.4; North Dakota's retaliatory termination statute N.D.C.C. § 34-01-20; Section 15(a)(3) of the Fair Labor Standards Act (hereinafter, "FLSA") and 29 U.S.C. §§ 201-219; and 42 U.S.C. § 1983.  The discriminatory conduct in this action includes failure to promote, unequal terms and conditions of my employment, discrimination based upon Ms. Krile's gender, harassment, retaliation, and termination of Ms. Krile's employment.  The discriminatory acts occurred from 2013 through present.  Ms. Krile believes the Defendants are still committing acts of discrimination against her.

1

## Parties

[3]     Ms. Krile is an individual who is a citizen of the United States of America and of the State of North Dakota.  Ms. Krile served the public as a Sergeant with the Bismarck Police Department (hereinafter, "BPD") and was employed by the City for 14 years before she was wrongfully terminated in March 2017.

[4]     The City is a municipal corporation located in Burleigh County and organized under the laws of the State of North Dakota.  The City, through its agents and employees, is responsible for and does in fact hire, train, supervise, and instruct police officers in all grades in the performance of their duties.  The City is a municipality and designated as such in accordance with the North Dakota Century Code, Title 40, and as such, is subject to civil suit and may be held independently or vicariously liable for the discriminatory conduct of its officers, employees, agents, or ostensible agents under N.D.C.C. § 32-12.1-04.

[5]     Donlin was the Chief of Police for the City of Bismarck, North Dakota while Ms. Krile was a sergeant with the BPD.  Chief Donlin was acting under color of law, in the course and scope of his employment, as a law enforcement officer with the City of Bismarck at all times material.  Chief Donlin was responsible for final policy-making decisions and was responsible for officer training, supervision, and conduct.  Chief Donlin was also responsible for enforcing the regulations of the City of Bismarck Police Department and for ensuring that police personnel obeyed the laws of the State of North Dakota and the United States of America.  As leader of police administration, Chief Donlin was responsible for the overall administration of department operations, training initiative, and professional standards.  He is sued in his individual and official capacities.

[6]     Service of process may be made on Defendant City of Bismarck through its counsel: **Randall Bakke, Bakke Grinolds Wiederhold, 300 W Century Ave, Bismarck, ND 58503**.

Service of process may be made on Defendant Daniel Donlin:  **Daniel Donlin, 3101 Promontory Dr, Bismarck, ND 58503-0975**.

## Jurisdiction and Venue

[7]     This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 (federal question).

[8]     Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 (original jurisdiction), 1332 (original jurisdiction), 1343 (original jurisdiction), and 1367 (supplemental jurisdiction).

[9]     Venue is proper in the United States District Court for the District of North Dakota pursuant to 28 U.S.C. § 1391 since a substantial part of the events or omissions giving rise to this action occurred in Bismarck, North Dakota and the parties involved are residents of North Dakota.

[10]    The amount in controversy is within the jurisdictional limits of this Court pursuant to 28 U.S.C. § 1332.

[11]    This Court has jurisdiction over all claims in this action.

[12]    All conditions precedent to filing this cause of action have been met.

## Exhaustion of Federal Administrative Remedies

[13]    Ms. Krile filed a charge with the North Dakota Department of Labor and dually with the Equal Employment Opportunity Commission (hereinafter "EEOC") regarding the Defendant's alleged discriminatory conduct on January 18, 2017.  The EEOC issued a Notice of Right to Sue letter which Ms. Krile received on October 18, 2018.  *See* Exhibit 1.

## Factual Allegations

[14]    Ms. Krile was employed by BPD from approximately April 1, 2004, through March 27, 2017.  Her positions included, but were not limited to, Patrol Officer, Field Training Officer, Sergeant, and Acting Lieutenant.

[15]     From April 1, 2004, through March 27, 2017, BPD consistently employed over 100 employees.

[16]     When Ms. Krile began to advance at BPD, BPD began making drastic changes in their long-standing procedures to prevent her from achieving advanced ranks.  From the time Ms. Krile's employment with BPD began in 2004, BPD procedure was to promote the most senior sergeant *on the shift* to any acting lieutenant opening on that shift; however, when Ms. Krile began advancing in the ranks 10 years later, becoming eligible for those positions, Chief Donlin suddenly changed the longstanding promotion procedure to sergeant seniority *on the whole Department*.  This prevented Ms. Krile from obtaining the acting lieutenant position in 2014 and 2016.  However, due to Ms. Krile's increasing tenure and career trajectory, BPD had to find other ways to avoid promoting her further up the ranks of their male-dominated Department.

[17]     BPD knew the lieutenant position would be opening in 2017, and Ms. Krile was both aptly qualified and interested in the position; however, BPD could not have Ms. Krile get that position.  BPD needed a scheme to avoid putting a female in that position, especially since Ms. Krile was the most senior Sergeant at BPD who wanted the position and was the most qualified.  BPD's solution was to commence a systemic ruse of performance/supervisory/misconduct allegations to "devalue" Ms. Krile, despite that conduct being wholly inconsistent with Ms. Krile's career up to that point.  This ruse would then be the catalyst for a low evaluation score in BPD's "war room," and a low "war room" score meant BPD could proverbially sideline her career advancement.

[18]     By way of background, the "war room" is an unrecorded, unstandardized, unprofessional ranking of all members in the Department by superior officers.  It's the adult male equivalent of picking teams during middle school recess: the "different" kid or the girl who wants to play football with the boys gets picked last—for the conspicuously unspoken reason.  However, in the real

4

world, the "war room" rank also establishes monetary performance bonuses and eligibility/ineligibility for promotions. All supervisors are present in the war room, but if enough of the good ole' boys give Ms. Krile a low score, it cajoles the remainder of them into not questioning the reasoning behind it, thus allowing BPD the plausible deniability of offering a "fair department consensus" for any particular officer's ranking.

[19]     In 2016, BPD supervisors and command staff were fully aware that assigning Ms. Krile a score below 3.0 in the "war room" would prevent Ms. Krile from being promoted the following year to lieutenant and from taking any specialty position for two years. That was BPD's solution. Accordingly, the unrecorded, unstandardized, unprofessional group of adult men in the "war room" gave Ms. Krile the lowest score in the Department at a 2.9. From the second-best tier in the Department to the lowest ranking member of the department in two years—by complete coincidence.

[20]     BPD mistakenly believed Ms. Krile would back down like the other females when she was segregated and discriminated. Instead, Ms. Krile continued to strive towards advancement despite BPD's continued attempts to kill Ms. Krile's career. During this time, BPD began denying Ms. Krile training opportunities which would otherwise make her more eligible and more competitive for the position of lieutenant. Every excuse imaginable was garnered to justify her training request denials. Finally, on January 18, 2017, Ms. Krile filed a complaint with the Department of Labor on January 18, 2017.

[21]     A mere two months later, on March 22, 2017, Assistant State's Attorney Julie Lawyer coincidently issued a memorandum to BPD indicating that her spontaneous review of Ms. Krile's personnel file and investigation of reports evidenced Ms. Krile had lied and could no longer be used as a prosecution witness. The memorandum was issued upon patently false evidence and in

clear ignorance to prevailing jurisprudence.  The memorandum, colloquially referred to as a *Giglio* letter, is ignorant as to actual prosecutorial mandates derived from *Brady*,[1] *Giglio*,[2] and their progeny.  It is wholly inaccurate and incorrect.  Furthermore, as the victim of false allegations of impropriety, Ms. Krile was not given procedural due process protections that were afforded to male colleagues in the same or similar position.  Instead of a BPD internal investigation to verify or refute Assistant State's Attorney Julie Lawyer's beliefs, Ms. Krile's employment with BPD was summarily terminated on March 27, 2017.

[22]    In addition to terminating Ms. Krile's employment, BPD reported her to the Peace Officer Standards and Training Board (hereinafter, POST Board) for "falsifying written or verbal communications" in violation of the Peace Officer Code of Conduct.[3]  Chief Donlin, under oath at the POST Board hearing, personally testified against Ms. Krile and indicated all of Assistant State's Attorney Lawyer's allegations of Ms. Krile were factually accurate.  He further provided sworn testimony regarding a series of reports to allegedly illustrate that Ms. Krile was working and knew officers were making non-exigent solo arrests despite her saying she was unaware of that practice.

[23]    Unfortunately for Chief Donlin, none of the reports proffered and sworn to as accurate actually support his position (or Assistant State's Attorney Julie Lawyer).  Instead, none of the reports show a solo arrest was made, which would otherwise show Ms. Krile was lying, and one report was from a time Ms. Krile wasn't even working—she was instead with Chief Donlin at a funeral despite Chief Donlin's sworn testimony to the contraire.

---

[1] Brady v. Maryland, 373 U.S. 83 (1963)
[2] Giglio v. United States, 405 U.S. 150 (1972)
[3] North Dakota Administrative Rule Chapter 109-02-05-01(4)(e)

[24]    The POST Board—in direct contradiction to contentions by BPD and Assistant State's Attorney Lawyer—unanimously held Ms. Krile did <u>not</u> "lie, provide false testimony, provide misleading information, or falsify written or verbal communications . . . ." Her POST Board case was dismissed.

[25]    Since her termination, Ms. Krile has applied for law enforcement positions for which she is exceedingly qualified; however, subsequent to her unlawful termination and career assassination, she has been unable to gain a full-time law enforcement position.  The erroneously issued *Giglio* letter and termination letter is maintained in her BPD personnel file and continually publishes the false narrative she lied and is untrustworthy.  These materials have been distributed to at least one of her prospective employers as she has attempted to regain full time law enforcement employment; despite being supremely qualified, Ms. Krile has been rejected for every full-time law enforcement position she has applied for since this incident.

[26]    Ms. Krile was discriminated against by the Defendants and wrongfully terminated.  As a result, Ms. Krile has suffered pain, suffering, and emotional distress including punitive damages.

[27]    A charge of discrimination was filed with the North Dakota Department of Labor on January 8, 2017 and amended to include retaliation on March 28, 2017.  The U.S. Equal Opportunity Commission issued a Dismissal and Notice of Suit Rights on October 15, 2018, to bring suit within 90 days.

[28]    Defendants conduct is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; North Dakota Human Rights Act, N.D.C.C. ch. 14-02.4; North Dakota's retaliatory termination statute N.D.C.C. § 34-01-20; Section 15(a)(3) of the Fair Labor Standards Act (hereinafter, "FLSA") and 29 U.S.C. §§ 201-219; and 42 U.S.C. § 1983.

## First Claim

### GENDER DISCRIMINATION: TERMS, CONDITIONS, OR PRIVILEGES OF EMPLOYMENT

[29]    Plaintiff incorporates all allegations contained in the preceding paragraphs.

[30]    Defendants actions related to gender discrimination, including failure to promote and adverse treatment as to Ms. Krile's terms, conditions, and/or privileges of employment, constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*; 42 U.S.C. § 1983; and the North Dakota Human Rights Act.

[31]    As a result of the conduct of the Defendants, Ms. Krile has suffered injury including, but not limited to, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages in excess of $100,000.00, the precise amount to be determined at trial.

## Second Claim

### DISCRIMINATORY AND RETALIATORY DISCHARGE

[32]    Plaintiff incorporates all allegations contained in the preceding paragraphs.

[33]    Ms. Krile engaged in protected activity when she filed a complaint with the North Dakota Department of Labor.  Defendants were aware of the complaint and had been for a period of time. Defendants retaliated against Ms. Krile for engaging in protected activity.  The retaliatory conduct took many forms, eventually resulting in wrongful termination.

[34]    The discriminatory and retaliatory discharge constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*; 42 U.S.C. § 1983; and N.D.C.C. § 34-01-20.

[35]    As a result of the conduct of the Defendants, Ms. Krile has suffered injury including, but not limited to, compensatory damages for future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages in excess of $100,000.00, the precise amount to be determined at trial.

### Third Claim

#### WRONGFUL TERMINATION

[36] Plaintiff incorporates all allegations contained in the preceding paragraphs.

[37] The acts by Defendants, including retaliating and terminating Ms. Krile for activity in which male officers were engaged in, constitute the tort of wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*; 42 U.S.C. § 1983; and N.D.C.C. § 34-01-20.

[38] As a result of the conduct of the Defendants, Ms. Krile has suffered injury including, but not limited to, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages in excess of $100,000.00, the precise amount to be determined at trial.

### Fourth Claim

#### VICARIOUS LIABILITY

[39] Plaintiff incorporates all allegations contained in the preceding paragraphs.

[40] By enforcing BPD policies, Ms. Krile engaged in protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* and 42 U.S.C. § 1983.

[41] Defendants are vicariously liable for the acts and omissions of their employees, agents, and staff.

[42] To the extent that any City employees or agents exhibited retaliatory conduct that violated state and federal law, the Defendants are vicariously liable.

### Fifth Claim

#### DAMAGES

[43]   Ms. Krile incorporates all allegations contained in the preceding paragraphs.

[44]   Defendants have seriously damaged Ms. Krile's standing and associations in her community by imposing upon her a stigma that forecloses the freedom to take advantage of other employment opportunities, as the basis for Ms. Krile's termination is substantially false.

[45]   As a result of the conduct of the Defendants, Ms. Krile has suffered injury including, but not limited to, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages in excess of $100,000.00, the precise amount to be determined at trial.

[46]   The violations of the Defendants give rise to damages, including but not limited to, back pay, attorney fees, interest, equitable relief, compensatory and punitive damages, and actual and nominal damages as well as injunctive relief.

### Sixth Claim

#### ATTORNEY'S FEES

[47]   Plaintiff incorporates all allegations contained in the preceding paragraphs.

[48]   As a result o the acts and omissions of Defendants, as specifically set forth herein, it was necessary for Ms. Krile to secure counsel to present and prosecute this matter on her behalf.

[49]   Ms. Krile is entitled to recover attorney's fees and costs for bringing this action pursuant to 29 U.S.C. § 201, *et. seq.*, and other relevant statutes.

### Jury Demand

[50]   Ms. Krile hereby requests a trial by jury on all issues triable by a jury in this case.

**Prayer for Relief**

[51]   WHEREFORE, Ms. Krile respectfully requests judgment be entered in her favor and against the Defendants as follows:

a. That Ms. Krile be awarded all available damages, including actual, consequential, statutory, compensatory, and special and punitive damages (as allowed by law);

b. That Ms. Krile be awarded injunctive relief, including reinstatement or some other make-whole remedy that returns Ms. Krile to the position she would have occupied absent the Defendants conduct;

c. That pre and post-judgment interest be awarded, along with reasonable attorney's fees, costs, and expenses incurred by Ms. Krile in bringing this case; and

d. That this Court award such other relief as it deems proper.

Dated this 3rd day of January, 2019.

Redmann Law, P.C.
400 E. Broadway Ave., Ste. 410
P.O. Box 7097
Bismarck, ND 58507-7097
(701) 751-7188
*Attorneys for Plaintiff*

/s/ Chris Redmann
Chris Redmann (ND ID #07523)
credmann@redmannlawpc.com