IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Robyn Krile, individually,<br><br>                              Plaintiff,<br><br>vs.<br><br>City of Bismarck, North Dakota, a Municipal Corporation, and Daniel Donlin, in his official capacity as retired Chief of Police for the City of Bismarck, North Dakota,<br><br>                              Defendants. | Case No. 1:19-cv-00001 |

## ORDER DENYING MOTIONS *IN LIMINE*

[¶ 1]   THIS MATTER comes before the Court on four Motions *in Limine* filed by the Defendants, Daniel Donlin and City of Bismarck (collectively "Defendants") on May 2, 2022. Doc. Nos. 73, 77, 80, 83.  The Plaintiff, Robyn Krile ("Krile"), filed Responses to all four Motions on May 16, 2022. Doc. Nos. 89, 90, 91, 92.  A Reply to the Second Motion *in Limine* was filed May 19, 2022. Doc. No. 93. A Reply to the Fourth Motion *in Limine* was filed on May 20, 2022. Doc. No. 95. Replies to the First and Third Motions *in Limine* were filed on May 23, 2022. Doc. Nos. 98, 100. Trial is set to begin on June 1, 2022. For the reasons explained below, the Motions *in Limine* are **DENIED.**

ANALYSIS

   **I.   Defendants' First Motion *in Limine***

[¶ 2]   Defendants' First Motion *in Limine* is characterized as a Motion *in Limine* regarding Giglio matters. The Motion asks this Court to exclude evidence, testimony, and argument regarding several matters as well as take judicial notice of state court actions.

### i. Issue Preclusion and Judicial Notice

[¶ 3]   First, Defendants request this Court take notice of two state court matters, Krile v. Lawyer, 2020 ND 176, 947 N.W.2d 366 and Krile v. Lawyer, 2022 ND 28, 970 N.W.2d 150. Defendants request the Court take notice of these matters and "apply collateral estoppel to factual and legal issues made in a separate North Dakota lawsuit." Doc. No. 78. Defendants ask the Court to "bar Krile from attempting to re-litigate the Giglio letter and related issues" and list a number of "facts" the Defendants believe the Court should notice. Id. The Defendants also ask that this Court instruct the jury that they may not consider "the Giglio investigation, the decision not to use Krile in criminal proceedings, the creation and communication of the Giglio letter to the BPD or the decision to issue a Giglio letter to Krile." Id.

[¶ 4]   "We may take judicial notice of other judicial opinions, and the earlier proceedings are relevant in deciding a claim of issue preclusion." Knutson v. City of Fargo, 600 F.3d 992, 1000 (8th Cir. 2010) (citing Kent v. United of Omaha Life Ins. Co., 484 F.3d 988, 994 n. 2 (8th Cir. 2007). "Issue preclusion bars relitigation of an issue if the same issue was involved in both actions; the issue was actually litigated in the first action after a full and fair opportunity for litigation; the issue was actually decided in the first action on the merits; the disposition was sufficiently final; and resolution of the issue was necessary in the first action." John Morrell & Co. v. Loc. Union 304A of United Food & Com. Workers, AFL-CIO, 913 F.2d 544, 562 (8th Cir. 1990) n. 16. "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).

[¶ 5]     The vast majority of the "facts" and "law" the Defendants ask this Court to judicially notice are not actually facts that were found by the state court. These are arguments more akin to a Motion to Reconsider the Order on Summary Judgment. The Defendants are asking this Court to come to a different conclusion. Defendants additionally, in passing, ask this Court to notice "facts" about Krile filing a complaint with the North Dakota Department of Labor and Human Rights. Regarding Krile's complaint with the Department of Labor, this Court has already determined the Defendants' argument did not have merit at the Summary Judgment stage and is not inclined to revisit that conclusion.

[¶ 6]     The state court cases do not stand for any of the asserted "facts" the Defendants purport. The state court case was between Krile and States Attorney Julie Lawyer, who is not a party to this case. The case did not involve any discrimination or wrongful termination claims. Instead, Krile brought a defamation claim against States Attorney Lawyer. See Lawyer, 2020 ND 176, 947 N.W.2d 366; Lawyer, 2022 ND 28, ¶ 33, 970 N.W.2d 150. As the Plaintiff points out, the North Dakota Supreme Court did not address the accuracy of the Giglio letter or if anything was based on discrimination. Instead, the North Dakota Supreme Court concluded at the motion to dismiss stage, when no fact finding had occurred, that Lawyer's communication *to* Donlin had been entitled to qualified privilege under N.D.C.C. § 14-02-5(3). Id. at 156. The Supreme court went on to say because States Attorney Lawyer's communication *to* Donlin was entitled to qualified privilege, Krile's complaint needed to allege actual malice. Because it did not, the Complaint was dismissed for failure to state a claim. Id. at 159.

[¶ 7]     "As compared to claim preclusion, the rules of issue preclusion do not purport to prohibit litigation of matters that never have been argued or decided. Whether the label applied be the modern term of issue preclusion, the still current phrases of collateral estoppel and direct estoppel,

or more antique names, the principle is simply that later courts should honor the first actual decision of a matter that has been *actually litigated.*" § 4416 Issue Preclusion in General, 18 Fed. Prac. & Proc. Juris. § 4416 (3d ed.)(emphasis added). The issues the Defendants asks this Court to notice here have never been argued or decided. No matter before this Court has been "actually litigated" before. No factual discovery even occurred during the state court case. A state court defamation action against States Attorney Lawyer, who is not a party here, is entirely different from these federal gender discrimination and wrongful termination claims against the City of Bismarck. Unlike the defamation lawsuit against States Attorney Lawyer, this case has had extensive discovery and the issues are fleshed out and ready to be tried to a jury. The First Motion *in Limine* in this regard, is **DENIED**.

### *ii. Exclusion of Evidence of Detective Spotts and Officer Vetter*

[¶ 8]    Defendants' First Motion *in Limine* requests the Court exclude evidence regarding two "incidents" that occurred for other officers. Defendants request that a 2009 incident involving Officer Spotts be excluded. In 2009, while Spotts was off-duty, he was drinking and driving. Doc. No. 81. His vehicle became stuck in a ditch. Id. The vehicle was discovered a few hours later by BPD with a few empty beer bottles. Id. One of the responding officers called Spotts, because he was the owner of the vehicle, to investigate. Id. Spotts answered and lied, saying his "friend" took the vehicle. Id. Later, Spotts informed BPD he had been driving the vehicle and that he had been drinking. Id. Spotts received a Notice of Suspension and Reprimand, but was not terminated. Id. Defendants also request this Court exclude evidence concerning a 2013 incident involving a female office, Officer Vetter. Vetter threw away marijuana in a purse in the women's locker room rather than following procedure. Id. Vetter was Giglio impaired but, unlike Plaintiff Krile, Vetter remains employed. Id.

[¶ 9] To support this contention, Defendants cite cases that state there is a rigorous test. Defendants argue Spotts and Vetter are not comparable because "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." See Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000); Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012). As the Defendants point out, this is part of the McDonnell Douglass burden-shifting framework the Court has already addressed at summary judgment. 670 F.3d 844 (8th Cir. 2012). This issue has already been decided and will not be revisited in a Motion *in Limine*. Additionally, the Eighth Circuit has previously instructed there were conflicting lines in cases in the Circuit regarding the standard of the burden-shifting framework and chose to follow a "low-threshold standard for determining whether employees are similarly situated." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005) (analyzing Clark), abrogated on different grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011).[1] The low-threshold is met here.

---

[1] Under the McDonnell Douglas framework, the "plaintiff must first present a prima facie case of intentional discrimination. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. If defendant meets that minimal burden, plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful ... discrimination." Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003). There are four steps in the prima facie case itself, " (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination." Wells v. SCI Mgmt., L.P., 469 F.3d 697, 700 (8th Cir. 2006). At the pretext stage the Plaintiff must prove pretext, which can be shown by instances of disparate treatment; however, the Plaintiff must "prove that they and the top applicants were 'similarly situated in all relevant respects'—a 'rigorous' standard." Torgerson, at 1051. The Eighth Circuit noted there were conflicting lines in cases where the Circuit had applied both the "low threshold" or "rigorous standard" at both the fourth step of the prima facie stage and the pretext stage. Ultimately, the Circuit held "[u]sing a more rigorous standard at the prima facie stage would 'conflate the prima facie case with the ultimate issue of discrimination,' thereby effectively eliminating the burden-shifting framework the Supreme Court has directed us to use."

[¶ 10] Defendants also argue Spotts' and Vetter's misconduct is different or much less serious and therefore irrelevant. These arguments were already made in the summary judgment motion and resolved in the order. Nonetheless, "[t]o require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination. Common sense as well as our case law dictate that we reject such an approach." Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 488 (8th Cir. 1998), abrogated on different grounds by Torgerson, 643 F.3d 1031. Spotts' and Vetter's conduct was certainly more serious. In fact, it was criminal. Common sense as well as case law dictate this Court should reject the Defendants' argument. In this regard, Defendants' First Motion *in Limine* is **DENIED**.

## II.  Second Motion *in Limine*

[¶ 11] Defendants' Second *Motion in Limine* is characterized as a Motion to "Exclude Plaintiff's request for Reinstatement/Front Pay." Doc. No. 77. This Motion asks the Court to exclude any evidence, testimony, or argument by the Plaintiff concerning her request for reinstatement or any potential request for front pay in lieu of reinstatement. Doc. No. 78. The Defendants argue reinstatement or front pay may be a component of the equitable award to a successful Title VII plaintiff, but those types of relief are reserved to the Court. Id. Plaintiff, in the Response "stipulates to the proposal that the Court be empowered to decide if reinstatement or front pay be awarded (and to what amount) in the event of a Plaintiff's verdict." Doc. No. 90. The Plaintiff notes however, it is expected testimony will be elicited that she "wants her job back" and the case is "not

---

The cases the Defendants cite only refer to the pretext standard, which this Court has already addressed at Summary Judgment.

a 'money thing.'" Id. The Defendants, in the Reply, take issue with the introduction of evidence that the Plaintiff "just wants her job back" as it is not within the power of the jury to decide equitable remedies and would only confuse them. Doc. No. 93. Saying "I want my job back" is one way to say "I did not want to be fired." Since the parties have already stipulated that the Court should decide front pay or reinstatement and not the jury, the Motion *in Limine* in this regard is **DENIED**, as the stipulation makes it unnecessary. Regarding mention of the Plaintiff "wanting her job back," it goes to the equitable award and should be heard by the Court and the jury, which will be properly instructed to what they are to decide. The Motion *in Limine* in this regard is **DENIED.**

### III.     Third Motion *in Limine*

[¶ 12]  Defendants' Third Motion *in Limine* is characterized as a Motion to "Exclude Instances of Alleged Sexual Harassment & Alleged Misconduct Involving Others." Doc. No. 80. Defendants request the exclusion of evidence and testimony of alleged sexual harassment or misconduct: a BPD policy concerning officers in romantic relationships not being allowed on the same shift, a "hot-tub" 2013 incident where an off-duty female officer was sexually assaulted by a male officer in a hot tub at a party and other allegations of sexual assault against the same BPD officer, evidence concerning a text message from a male BPD officer sexually harassing a female BPD officer, sexual harassment of a female officer by male members of the bomb squad, a female officer not being selected for SWAT and a male officer making sexual advances towards the same female officer. Defendants argue these incidents occurred after the statute of limitations, are hearsay, and will only inflame the jury. Doc. No. 81. Much of the Defendants arguments are the same previous arguments that these situations are not comparable. To support this contention, the Defendants again cite Bone. These arguments are the same as the First Motion *in Limine* and involve the

McDonnell Douglass burden-shifting framework. The Court has addressed this in summary judgment and did not find this argument convincing at that stage. It is no more persuasive on a Motion *in Limine*.

[¶ 13] One interesting argument made by Defendants is all these incidents are outside the statute of limitations. A statute of limitations is meant to determine if a claim is brought in a timely manner. It does not determine the admissibility of evidence. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002) ("A party must file a charge within either 180 or 300 days of the date that a discrete retaliatory or discriminatory act "occurred" or lose the ability to recover for it.) "[T]he statute [of limitations does not] bar an employee from using the prior acts as background evidence to support a timely claim." Id. at 103. None of these prior acts are barred by the statute of limitations for evidentiary purposes.

[¶ 14] Defendants also assert hearsay objections. The hearsay objections are based solely on discussions from Krile's deposition saying that she had heard about these incidents from other officers. At this point, this objection is premature. The Plaintiff may choose to present the information at trial in a manner that is not hearsay. If not, the Defendants may assert hearsay objections at trial.

[¶ 15] Finally, the Defendants argue these incidents will inflame the jury. The Defendants provide no authority to support the idea the prejudice will be unfair or confuse the jury. Such is the nature of an adversarial process. Virtually all evidence or testimony that is adverse to an opposing party is prejudicial. The question is whether the evidence is *unfairly* prejudicial and the probative value is outweighed by the prejudicial effect. Fed.R.Evid. 403.  Gender discrimination and retaliation are at the heart of the claims the Plaintiff has made. Even if these incidents of discrimination may be prejudicial, it is not unfair for the jury to hear about it; a pattern or history

of similar bad conduct may help to prove whether the Plaintiff was discriminated against. The jury is entitled to know the context of the case and the facts that explain the context. Furthermore, "even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and juries are presumed to follow their instructions." Zafiro v. United States, 506 U.S. 534, 540 (1993). The Third Motion *in Limine* is **DENIED**.

### IV.     Fourth Motion *in Limine*

[¶ 16]  Defendants' Fourth Motion *in Limine* is characterized as a Motion "Concerning North Dakota POST Board." Doc. No. 83. Defendants ask to Court to "apply issue preclusion and take judicial notice of factual and legal determinations concerning POST Board matters" made in the state court Krile v. Lawyer cases. Id. Specifically, the Defendants argue the POST board information will unduly prejudice the Defendants, waste time, and unduly confuse the jury. Id.

[¶ 17]  Defendants argue the POST Board issues have already been decided adversely to Krile in the state court, in particular that the BPD is absolutely privileged in its communications with the POST Board. Doc. No. 84. Much of the arguments on issue preclusion are the exact same as the First Motion *in Limine*. The analysis and argument is the same. In the first case, the North Dakota Supreme Court had so little evidence it the record, it could not make any determination about whether States Attorney Lawyer disclosed the Giglio letter to the POST Board or whether it was disclosed as part of a Board investigation. Instead, the state Supreme Court analyzed States Attorney Lawyer's role as if she had disclosed the letter to the POST Board. Lawyer, 2020 ND 176, ¶ 35. In the second appeal, Krile simply did not argue the district court erred in dismissing her claims related to States Attorney Lawyer publishing the Giglio letter to the POST Board. Lawyer, 2022 ND 28, ¶ 17. Again, States Attorney Lawyer is not a party in this case. Dan Donlin is a party. Plaintiff has alleged that Donlin made a retaliatory communication to the POST Board

after her termination. Doc. No. 92. Donlin's alleged retaliatory communication to the POST Board is not an issue that has already been litigated. The "facts" and "law" the Defendants ascribe to the North Dakota Supreme Court simply do not exist.

[¶ 18] Defendants also argue the POST Board communications would be unduly prejudicial, would waste time or confuse jurors. The Defendants argue the POST Board was not tasked with determining whether Krile committed Giglio violations. Defendants argue what the POST Board considered in an adverse license action would be comparing "apples to oranges." Doc. No. 84. Defendants' argument misses the mark. This is not necessarily about the POST Board absolving Krile of wrongdoing, but whether or not Donlin engaged in wrongdoing in his communications with the Board. In either event, as this Court has already noted, all adverse testimony is prejudicial. The question is whether it is unfairly prejudicial. There is nothing here for the Court to conclude the communication with the POST Board would be unfair to the Defendants. The Fourth Motion *in Limine* is **DENIED**.

[¶ 19] **IT IS SO ORDERED**.

DATED May 27, 2022.

Daniel M. Traynor, District Judge
United States District Court